UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEBCORE-OBAYASHI JOINT VENTURE,<br><br>    Plaintiff,<br><br>    v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>    Defendant. | Case No. 19-cv-07799-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 55 |

On June 30, 2021, the Court held a hearing on plaintiff's motion for partial summary judgment. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

## DISCUSSION

Plaintiff seeks the following order from the Court:

1. The Court finds as a matter of undisputed fact and law that WOJV has met its burden of establishing that the fractured girders fall within the INSURING AGREEMENT of the Zurich American Insurance Company builder's risk policy ("the Policy"). The burden thus shifts to Zurich to prove that the Cost of Making Good Exclusion clearly and unambiguously defeats coverage.

2. As a matter of law:
    (a) The Cost of Making Good Exclusion contained in Zurich's policy only excludes that subset of costs that would have been incurred to remediate the defects prior to the fractures occurring; and
    (b) The ensuing loss provision is a giveback of coverage, which need not be reached unless Zurich establishes that all of the costs WOJV incurred to remediate the fractures would also have been incurred to remediate the defects immediately prior to the fractures.

Plaintiff's Proposed Order (Dkt. No. 55-1).

The insured has the burden of showing that a loss falls within the scope of an insuring

agreement. *See Garvey v. State Farm Fire & Cas. Co.*, 48 Cal.3d 395, 406 (1989). Once the insured meets its burden, "the burden is on the insurer to prove a claim is specifically excluded." *Id.* "[E]xclusionary clauses are interpreted narrowly, whereas clauses identifying coverage are interpreted broadly." *Id.*

The Court concludes that plaintiff has met its burden to show that the fractured girders fall within the Insuring Agreement. The Insuring Agreement provides,

> 1. <u>INSURING AGREEMENT</u>
>
> A. Coverage
>
> This Policy, subject to the terms, exclusions, limitations and conditions contained herein or endorsed hereto, insures against all risks of direct physical loss of or damage to Covered Property while at the location of the INSURED PROJECT and occurring during the Policy Term.

Zurich Completed Value Builders Risk Policy at Section I (Dkt. No. 1-1). The policy does not define "loss" or "damage."

Courts interpreting "direct physical loss of or damage to Covered Property" have "construe[d] the words 'direct physical' to modify both 'loss of' and 'damage to,'" *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 554 (2003), and have defined "physical damage" to mean "when an item of tangible property has been 'physically altered.'" *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010); *see also 10E, LLC v. Travelers Indemnity Co. of Connecticut*, 483 F. Supp. 3d 828, 835-36 (C.D. Cal. 2020) ("Under California law, . . . [p]hysical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.'") (quoting *MRI*, 187 Cal. App. 4th at 779); *cf. Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, CV 17-04908 AB (KSX), 2018 WL 3829767, at *3-4 (C.D. Cal. July 11, 2018) (holding "direct physical loss of" in "direct physical loss of or damage to" "contemplates that the property is misplaced and unrecoverable, without regard to whether it was damaged" and "to interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause").

Here, there is no factual dispute that the Fremont Street steel girders fractured, and those fractures physically altered the girders. The evidence before the Court includes a report and a

2

declaration prepared by Kent Engineering, which was hired by Zurich to investigate the cause of the girder fractures. Kent Engineering found that there were "full fractures" that caused "structural damage" to the girders that needed to be repaired. *See, e.g.*, Kent Decl. ¶¶ 8-9 (Dkt. No. 13-2). It is further undisputed that the fractures occurred in "Covered Property" while at the "INSURED PROJECT," and the Court has already found that the fractures occurred during the policy term. Thus, the fractured girders constitute "physical" "damage" to "Covered Property" under the Insuring Agreement.

Zurich's opposition brief largely focuses the issue of WOJV's claimed damages. Zurich argues *inter alia* that "plaintiff fails to present any evidence of the costs [that] it alleges come within the insuring agreement" and that plaintiff cannot show that any of the costs that it incurred in redesigning and rebuilding the bridges would not have been incurred had the design[1] defect been discovered prior to the fractures. Zurich's Opp'n at 7, 9 (Dkt. No. 59). However, evidence of WOJV's costs is not before the Court at this time, and as discussed *supra*, the Court finds that the question of how the Cost of Making Good Exclusion applies in this case requires a factual determination that cannot be made on this record.

Zurich also argues, without citation to authority, that the girder fractures do not constitute "damage" under the Insuring Agreement because "the girder fractures cannot be deemed separate from the defective design itself" and the fractures are "part and parcel of the defective workmanship" excluded under the Cost of Making Good exclusion. *Id.* at 10. That exclusion provides,

> 4. EXCLUSIONS
>
> This Policy does not insure against loss, damage or expense caused by, resulting from, contributed to or made worse by any of the following, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical loss or damaged insured by this Policy, except as specifically allowed below:
>
> . . .
>
> B. Cost of Making Good
>
> The costs that would have been incurred to rectify any of the following had such

---

[1] As noted *infra*, the parties dispute what necessitated the redesign of the bridges.

rectification been effected immediately prior to the loss or damage:

(1) Fault, defect, error, deficiency or omission in design, plan or specification;

(2) Faulty or defective workmanship, supplies or material;

(3) Wear and tear, gradual deterioration, inherent vice, latent defect, corrosion, rust, dampness or dryness of the atmosphere.

However, if direct physical loss or damage by an insured peril ensues, then this Policy will cover for such ensuing loss or damage only.

For the purpose of this Policy and not merely this exclusion, Covered Property, or any portion thereof, shall not be regarded as damaged solely by virtue of the existence of any condition stated under (1), (2) or (3) above.

Zurich Completed Value Builders Risk Policy at Section I (Dkt. No. 1-1).

Zurich asserts that the final sentence of the Cost of Making Good Exclusion means that if any of the conditions in (1)-(3) are present, property is not "damaged" and therefore any loss is excluded under the policy, even if an entire structure collapsed due to defective workmanship. At the hearing, Zurich's counsel stated that if instead there was some additional cause of damage, such as a truck colliding into covered property, only then would there be "damage" covered by the policy. Zurich does not cite any authority for that proposition, and the Court is not persuaded by Zurich's argument. The Court notes that while apparently no court has interpreted this exact Cost of Making Good exclusion,[2] Canadian courts interpreting similar Zurich policy language have rejected Zurich's position. *See Acciona Infrastructure Canada Inc. v. Allianz Global Risks US Ins. Co.*, 2014 BCSC 1568 ¶¶ 133-153 (Can. B.C.) (rejecting insurers' argument that "over deflections and cracking of [concrete] slabs fall outside of the insuring provision of the Policy in that they constitute defects in

---

[2] Indeed, in Zurich's Quarterly Claims Journal, Zurich discusses versions of the Cost of Making Good exclusion and different claim scenarios, and states, "Scenario 3 shows the kind of challenges that can easily arise when applying the LEG and DE clauses. However, despite difficulties in their application commonly occurring, very few judicial decisions actually exist to offer any meaningful guidance. 'While lack of litigation is usually an indication of clarity, the opposite is actually true for the LEG and DE clauses,' says Lynch 'In fact, because such ambiguity exists there is, understandably, a preference to settle claims on a pragmatic basis in order to avoid the uncertainty of litigation. It would take cases at Supreme Court level to deliver ultimate clarity, which looks to be an unlikely development. In the meantime, it is therefore down to insurers, brokers and policyholders to work together and find appropriate solutions when challenges do arise.'" Zurich Quarterly Claims Journal at 10, available at https://www.zurich.co.uk/news-and-insight/-/media/News-and-Insight/Documents/Useful-documents/Commercial_Claims_Journal_Autumn_2017.pdf.

the slab, as distinct from damage" where court found that "the slabs were left in an altered physical state" and "the slabs experienced significant and varying degrees of over deflection and cracking throughout the facility that rendered the facility unfit for its intended purpose"). The *Acciona* court found that the question of whether the cracked concrete slabs were "damaged" under the policy was a distinct question from whether the plaintiff's costs were excluded as costs "which would have been incurred if replacement or rectification of the Insured Property had been put in hand immediately prior to the said damage." *Id*. at ¶¶ 153-155.

Accordingly, the Court GRANTS plaintiff's motion for partial summary judgment as follows:

> The Court finds as a matter of undisputed fact and law that WOJV has met its burden of establishing that the fractured girders fall within the INSURING AGREEMENT of the Zurich American Insurance Company builder's risk policy ("the Policy"). The burden thus shifts to Zurich to prove that the Cost of Making Good Exclusion clearly and unambiguously defeats coverage.

However, the Court finds that that factual disputes preclude summary judgment on the balance of the relief sought by plaintiff because there are disputes about what caused the girders to fracture and whether there were additional "defects" that needed to be remedied apart from the fractured girders. Where there are factual disputes about the nature of the "defects" and what caused those defects, the Court cannot conclude as a matter of law that "the Cost of Making Good Exclusion contained in Zurich's policy only excludes that subset of costs that would have been incurred to remediate the defects prior to the fractures occurring" or that "the ensuing loss provision is a giveback of coverage, which need not be reached unless Zurich establishes that all of the costs WOJV incurred to remediate the fractures would also have been incurred to remediate the defects immediately prior to the fractures." Accordingly, the Court DENIES plaintiff's request for partial summary judgment as framed in Paragraph 2 of the proposed order. The Court also DENIES plaintiff's request to strike Zurich's expert declaration.

**IT IS SO ORDERED**.

Dated: July 1, 2021 _____
SUSAN ILLSTON
United States District Judge